IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JOHN DECONNICK,

        Plaintiff,

    v.

CITY OF SEASIDE,
JOSHUA ZUNDEL,

        Defendants.

No. 3:12-cv-01501-HZ

OPINION & ORDER

Leonard R. Berman
4711 SW Huber Street, Suite E-3
Portland, OR 97219

    Attorney for Plaintiff

Gerald L. Warren
901 Capitol Street NE
Salem, OR 97301

    Attorney for Defendants

1 - OPINION & ORDER

HERNANDEZ, District Judge:

Plaintiff John Deconnick brings this 42 U.S.C. § 1983 action against Defendants City of Seaside and City of Seaside Police Officer Joshua Zundel. Plaintiff raises Fourth Amendment claims of excessive force and unreasonable seizure against Zundel and state law claims of battery and negligent hiring, training, and supervision against the City.

Defendants and Plaintiff move for summary judgment on all claims. Defendants argue that (1) the Fourth Amendment excessive force and unreasonable seizure claims fail as a matter of law and, alternatively, Defendant Zundel has qualified immunity; (2) the battery claim fails because Defendant Zundel's actions were justified; and (3) the negligent hiring, training, and supervision claims fail as a matter of law. Because I agree with Defendants that Zundel is entitled to qualified immunity on the excessive force claim and that the unreasonable seizure claim as well as the state law negligence claims fail as a matter of law, I grant Defendants' motion as to those claims. However, because I find issues of fact going to the reasonableness of the force used, I deny Defendants' motion as to the battery claim. I deny Plaintiff's motion.

## BACKGROUND

Late on Saturday, August 21, 2010, and into the morning hours of Sunday, August 22, 2010, Plaintiff John Deconnick was working as a bouncer at Pudgy's Bar in Seaside, Oregon. Jeffrey Oja Decl. ("Oja Decl.") ¶¶ 2–3; see also Ex. 1 to Gerald L. Warren Decl. ("Warren Decl.") at 4 (Pl.'s Dep.). While on duty at Pudgy's, Plaintiff wore a black hooded sweatshirt, known as a "hoody," that read "Security" in small yellow print on the left front breast of the sweatshirt and in large yellow print on its center back. John Deconnick Decl. ("Deconnick Decl.") ¶ 2; Ex. 1 to Warren Decl. at 19, 52–53.

Defendant Joshua Zundel was at that time and remains currently employed as an officer for the City of Seaside Police Department. Joshua Zundel Decl. ("Zundel Decl.") ¶ 1. At around 1:20 a.m. on August 22, 2010, Zundel and Officer Jeffrey Oja entered Pudgy's during a routine bar check. Oja Decl. ¶¶ 2–3. Because of these routine bar checks, Zundel and Plaintiff were professional acquaintances. Deconnick Decl. ¶ 3; Ex. 1 to Warren Decl. at 9–10.

Earlier that night, Pudgy's patrons Scott Lucia and Wade Horning were acting unruly and were asked to leave the bar. Ex. 1 to Warren Decl. at 20; Ex. 2 to Warren Decl. at 18 (William Nielsen Dep.). While some of the details of Lucia and Horning's removal from Pudgy's are unclear, the essence is undisputed. Horning, accompanied by Officers Oja and Zundel, exited the bar through the front door while Lucia, accompanied by Plaintiff, remained inside to pay. Ex. 1 to Warren Decl. at 24–25; see also Zundel Decl. ¶ 4. Officers Oja and Zundel stood outside the bar's front door speaking with Horning. Oja Decl. ¶ 4; Zundel Decl. ¶¶ 4–5.

After Lucia paid, Plaintiff began to escort Lucia out of the bar by walking behind him toward the front exit. Ex. 1 to Warren Decl. at 25. When Lucia passed William Nielsen, Pudgy's off-duty general manager, Lucia made a motion to push Nielsen. Id. at 25–26; Ex. 2 to Warren Decl. at 5. Plaintiff tried to stop Lucia by wrapping his arms around Lucia in a bear hug. Ex. 1 to Warren Decl. at 25–26. Plaintiff and Lucia both fell to the ground. Id. at 26, 29. Both stood up and faced each other, with Plaintiff facing the front door, trying to push Lucia down the hall toward it. Id. at 30. Lucia tried to punch Plaintiff, and they again fell to the ground, knocking over a potted plant. Id. at 39. Lucia grabbed at Plaintiff's clothes. Id. at 40. The fight was "out of control." Id. at 39. Other Pudgy's patrons surrounded Plaintiff and Lucia, yelling and screaming. Id. at 40. Plaintiff tried to subdue Lucia by wrapping his arm around Lucia's neck, and clung to Lucia's back, feet off the ground, both facing away from the front door. Id. at

3 - OPINION & ORDER

41, 43, 48. Plaintiff's "Security" sweatshirt was bunched halfway up his torso. Id. at 41, 47; Deconnick Decl. ¶ 6.

While the officers were outside talking to Horning, Zundel heard a commotion coming from inside the bar. Zundel Decl. ¶ 5. Through the window, Zundel could see two men, both facing away from him, fighting in the hallway near the front door. Id. Zundel did not recognize either man. Id. Zundel entered the bar and approached the fight. Id. ¶ 6. Although Zundel yelled "Police" and ordered the men to separate, Plaintiff did not hear him. Id. ¶ 6; Ex. 1 to Warren Decl. at 41. Plaintiff and Lucia continued fighting. Zundel Decl. ¶ 6; see also Deconnick Decl. ¶ 4. Because of the crowd, Zundel determined that going "hands on" to separate the fighting men would put his safety in danger. Zundel Decl. ¶ 6. He also decided against pepper spray because it would disperse into the crowd and affect more than just the men fighting. Id.

Zundel took out and activated his Taser X26. Id. ¶ 7. He yelled "Taser, Taser, Taser," but Plaintiff did not hear him, and the men did not stop fighting. Id.; Deconnick Decl. ¶ 5; Ex. 1 to Warren Decl. at 44. Pudgy's waitress Jessica Biros approached the scene and yelled at Zundel not to taser Plaintiff because Plaintiff was a Pudgy's employee. Jessica Biros Decl. ¶¶ 2, 5. Patron Amanda Jenkins also approached Zundel and said "don't tase him! That's the bouncer, he works here." Amanda Jenkins Decl. ¶¶ 2, 5. Zundel did not hear anyone identify Plaintiff as a bouncer, an employee, or John Deconnick, nor did he hear anyone yell not to use his Taser. Joshua Zundel Supp'l Decl. ¶ 2. Zundel fired the Taser at the man whose back was visible to him. Zundel Decl. ¶ 7. The Taser's prongs struck Plaintiff's bare back, and the Taser activated for a five-second cycle. Id. The Taser incapacitated Plaintiff, and the fight broke up as a result. Ex. 2 to Warren Decl. at 28; Zundel Decl. ¶ 7. Officer Oja, who had entered behind Zundel,

4 - OPINION & ORDER

secured Lucia, while Plaintiff stood up on his own. Ex. 1 to Warren Decl. at 50–51; Oja Decl.¶ 4; Zundel Decl. ¶¶ 7–8. Zundel personally knows both Lucia and Horning, who were arrested. Zundel Decl. ¶¶ 4, 7, 9. Plaintiff was not arrested. Id. ¶ 9. Zundel called paramedics, who removed the Taser probes from Plaintiff's back. Id. ¶ 8; Ex. 2 to Warren Decl. at 30.

## STANDARDS

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of informing the court of the basis of its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

Once the moving party meets its initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party to present specific facts showing a genuine issue for trial. Fed. Trade Comm'n v. Stefanchik, 559 F.3d 924, 927–28 (9th Cir. 2009). The nonmoving party must go beyond the pleadings and designate facts showing an issue for trial. Bias v. Moynihan, 508 F.3d 1212, 1218 (9th Cir. 2007) (citing Celotex, 477 U.S. at 324).

The substantive law governing a claim determines whether a fact is material. Suever v. Connell, 579 F.3d 1047, 1056 (9th Cir. 2009). The court draws inferences from the facts in the light most favorable to the nonmoving party. Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1112 (9th Cir. 2011). When both parties move for summary judgment, the court draws

5 - OPINION & ORDER

inferences from the facts in both parties' favor. Baldwin v. Trailer Inns, Inc., 266 F.3d 1104, 1117 (9th Cir. 2001).

If the factual context makes the nonmoving party's claim as to the existence of a material issue of fact implausible, that party must come forward with more persuasive evidence to support the claim than would otherwise be necessary. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## DISCUSSION

### I.  Excessive Force

Whether a police officer used excessive force during an arrest is governed by the reasonableness standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989); Mattos v. Agarano, 661 F.3d 433, 441 (9th Cir. 2011) ("Mattos II").  The court must determine whether the officer's actions were objectively reasonable in light of the facts and circumstances confronting the officer, without regard to underlying intent or motivation. Graham, 490 U.S. at 397.  "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." Id. at 396 (recognizing that police officers are often forced to make split-second judgments about amount of force necessary in particular situation).  The court must first consider the nature and quality of the Fourth Amendment intrusion, then balance it against the governmental interest at stake, considering such factors as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight. Id.; Deorle v. Rutherford, 272 F.3d 1272, 1279–80 (9th Cir. 2001).  In other words, the court balances "the amount of force applied against the need for that force." Bryan v. MacPherson, 630 F.3d 805,

823–24 (9th Cir. 2010).

Since the question of the reasonableness of force depends on the totality of the circumstances, it is usually a question of fact for the jury. See Tennessee v. Garner, 471 U.S. 1, 8–9 (1985); Luchtel v. Hagemann, 623 F.3d 975, 987–88 (9th Cir. 2010). However, on summary judgment, the court may make a determination as to reasonableness where, viewing the evidence in the light most favorable to the nonmoving party, the evidence compels the conclusion that the officer's use of force was reasonable. Long v. City & Cnty. of Honolulu, 511 F.3d 901, 905 (9th Cir. 2007).

    A.    Was Zundel's Use of Force Excessive?

        1.    Nature and Quality of the Intrusion

"We begin by analyzing the quantum of force—the type and amount of force—that [Defendant] used against [Plaintiff]." Bryan, 630 F.3d at 824. Zundel shot Plaintiff in the back using a Taser X26 in dart mode,[1] and activated the Taser for a single, five-second cycle. Zundel Decl. ¶ 7. There is no evidence describing the sensations Plaintiff experienced upon being tasered, although paramedics were called to remove the Taser's probes from Plaintiff's skin immediately following the incident, and Plaintiff was later treated at Providence Seaside Hospital for a concussion, contusions, headaches, and a brain injury resulting from Zundel's use of the Taser. Deconnick Decl. ¶ 8; Zundel Decl. ¶ 8. While it is unnecessary to decide the

---

[1] The Taser X26 may be deployed in dart mode and drive-stun mode. Mattos II, 661 F.3d at 443. Dart mode shoots two probes attached to the Taser by insulated wires into the target, which then deliver an electrical charge that "instantly overrides the victim's central nervous system, paralyzing the muscles throughout the body, rendering the target limp and helpless." Id. Drive-stun mode requires the operator to "remove[] the dart cartridge and push[] two electrode contacts . . . directly against the victim." Id. Unlike dart mode, drive-stun mode does not override the central nervous system, but does deliver an electric shock to the target. Id. Although the parties

7 - OPINION & ORDER

precise level of force in order to determine the reasonableness of that force, Mattos II, 661 F.3d at 443 (citing Scott v. Harris, 550 U.S. 372, 383 (2007)), the Ninth Circuit has held that "the X26 . . . used in dart-mode constitute[s] an intermediate, significant level of force that must be justified by the governmental interest involved." Bryan, 630 F.3d at 826. In Bryan, the officer activated his Taser a single time, and the court considered the use of force to be intermediate and significant. See id. at 822. Therefore the level of force used by Zundel on Plaintiff was intermediate and significant, and in order to be reasonable must be justified by an intermediate and significant need for force.

### 2. Governmental Interest at Stake

The next step in the excessive force analysis is evaluating the governmental interest at stake, or the need for force. The court measures the need based on the severity of the crime at issue, the threat to the safety of the officer or others, whether the subject is actively resisting arrest or attempting to evade arrest by flight, and any other relevant factors. E.g., Mattos II, 661 F.3d at 441. The most important factor in this analysis is the threat to the safety of the officer or others. Id. (citing Smith v. City of Hemet, 394 F.3d 689, 702 (9th Cir. 2005) (en banc)).

When Zundel observed the struggle between two men inside Pudgy's, he believed they were both engaged in the crime of disorderly conduct in the second degree, a Class B misdemeanor. Or. Rev. Stat. § (O.R.S.) 166.025(2)(a) (2011); Zundel Decl. ¶ 5. "While the commission of a misdemeanor offense is not to be taken lightly, it militates against finding the force used to effect an arrest reasonable *where the suspect was also nonviolent and posed no threat to the safety of the officers or others*." Bryan, 630 F.3d at 828–29 (emphasis added)

---

do not describe Zundel's Taser deployment as "dart mode," it can be inferred from the fact that probes shot into Plaintiff and had to be removed by paramedics. See Bryan, 630 F.3d at 824.

8 - OPINION & ORDER

(internal quotation marks omitted).  On the one hand, although disorderly conduct in the second degree is a misdemeanor as opposed to a more serious crime, Plaintiff and Lucia were physically fighting in a violent manner.  On the other hand, there is no evidence that Zundel believed either man fighting had a weapon, and the fight was between Plaintiff and Lucia exclusively.  Because the undisputed facts create multiple reasonable inferences, questions remain as to the severity of Plaintiff's crime and the appropriate response to that crime.

There is also no evidence that Zundel felt his personal safety was threatened by either Plaintiff or Lucia.  However, the physical contact between Plaintiff and Lucia indicates that their individual safety, at the very least, was in danger.  Furthermore, Plaintiff admitted that the situation was "out of control."  Ex. 1 to Warren Decl. at 39.  Although the threat to Plaintiff and Lucia's safety alone justified a use of force, when all inferences are drawn in the light most favorable to Plaintiff, the threat was minimal.  In contrast, drawing all inferences in the light most favorable to Defendant, the "out of control" fight could have put the gathering crowd in danger as well.  As with the severity of the crime, the threat to the safety of the officer or others, the most important factor in the governmental interest analysis, also creates competing inferences.

The third factor is whether Plaintiff was "actively resisting arrest or attempting to evade arrest by flight, and any other exigent circumstances[.]"  Deorle, 272 F.3d at 1280 (internal quotation marks omitted).  Zundel states that he yelled "Police" when he entered Pudgy's.  Zundel Decl. ¶ 6.  Plaintiff, however, states that he did not hear Zundel and was unaware that the police had reentered.  Ex. 1 to Warren Decl. at 41, 44.  Plaintiff further states that if he had been aware that the police were there, he "would have let the police handle it."  Id. at 44.  Drawing all inferences in the light most favorable to Plaintiff, he was not even aware the police were there,

9 - OPINION & ORDER

so actively resisting arrest was impossible. And even drawing inferences in the light most favorable to Defendants, Plaintiff was at most passively resisting arrest. Continually ignoring an officer's command is not active resistance. See Smith, 394 F.3d at 703. Even deliberately refusing to comply with an officer's command is not active resistance. Forrester v. City of San Diego, 25 F.3d 804, 805 (9th Cir. 1994). "[P]urely passive resistance can support the use of some force, but the level of force an individual's resistance will support is dependent on the factual circumstances underlying that resistance." Bryan, 630 F.3d at 830. Notably, the record does not show that Zundel intended to or indeed made any effort to arrest Plaintiff, and it is impossible to passively or actively resist an arrest that does not exist or was not attempted. Therefore this factor does not support use of significant force.

Plaintiff argues that Zundel should have recognized Plaintiff as the bouncer. Plaintiff supports this argument by pointing to the professional relationship Zundel and Plaintiff maintain, Officer Oja's recognizing Plaintiff as the bouncer, and Jessica Spiros, Amanda Jenkins, and others telling Zundel that Plaintiff was one of the men fighting and not to taser him. Zundel states that he did not recognize either party fighting because the writing on Plaintiff's sweatshirt was not visible. Zundel also states that Officer Oja recognized Plaintiff only one or two seconds before Zundel deployed his Taser, and that Zundel did not hear Spiros, Jenkins, or anyone else identifying Plaintiff or imploring Zundel not to taser him. Both parties present reasonable interpretations of the facts regarding whether Zundel should have recognized Plaintiff. If Zundel knew Plaintiff was one of the men fighting, this knowledge might decrease the need for force because Zundel would consider Plaintiff an ally in controlling the only threat, Lucia. In that case, a reasonable jury could conclude that tasering Plaintiff was excessive. The undisputed facts create competing reasonable inferences as to whether Zundel should have recognized

Plaintiff.

   3.  Balancing the Competing Interests

In order for the intermediate, significant use of force Zundel used against Plaintiff to be reasonable, the overall need for force, based on the governmental interest factors, must also be intermediate and significant. Drawing all inferences in the light most favorable to Plaintiff, the need for force was relatively minor because the perceived crime was mild and contained, only Plaintiff's and Lucia's safety was threatened, Plaintiff was not resisting arrest at all, and Zundel should have recognized Plaintiff as one of the participants in the fight. Yet drawing all inferences in the light most favorable to Defendants, the need for force was intermediate and significant because the fight was violent and out of control, the entire crowd's safety was in danger, and Zundel did not recognize Plaintiff. Because the evidence does not compel the conclusion that the force was excessive or reasonable, summary judgment on the merits of the excessive force claim is not warranted for either Defendants or Plaintiff.

  B. Is Zundel Entitled to Qualified Immunity?

The United States Supreme Court has described the qualified immunity doctrine as follows:

> The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.

<u>Pearson v. Callahan</u>, 555 U.S. 223, 231 (2009) (citations, internal quotation marks omitted).

The analysis of whether a government official is entitled to qualified immunity requires

11 - OPINION & ORDER

two steps. Saucier v. Katz, 533 U.S. 194, 201 (2001). "First, a court must decide whether the facts that a plaintiff has alleged or shown make out a violation of a constitutional right." Pearson, 555 U.S. at 232 (citations omitted). Second, "the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." Id. (quoting Saucier, 533 U.S. at 201). Qualified immunity applies "unless the official's conduct violated a clearly established constitutional right." Id. In other words, the government official is entitled to qualified immunity if either prong is answered negatively. Following Pearson, courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." Id. at 236.

For the purpose of this Opinion, I assume the violation of a constitutional right and proceed to the second prong of the qualified immunity analysis, "whether [Defendant's] use of force was premised on a *reasonable* belief that such force was lawful[.]" Deorle, 272 F.3d at 1285. The question is "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Id. (citing Saucier, 533 U.S. at 194–95). This inquiry is based on "the state of the law at the time" of the use of force. Bryan, 630 F.3d at 832. The case law need not be exactly analogous as long as a reasonable officer would be on notice that his conduct is lawful or not. Deorle, 272 F.3d at 1286.

On August 21–22, 2010, it was not clear to a reasonable officer that use of a Taser in the situation Zundel confronted was unlawful. At the time, the two most relevant Ninth Circuit decisions on tasering as excessive force were Mattos v. Agarano, 590 F.3d 1082 (9th Cir. 2010) ("Mattos I") and Brooks v. City of Seattle, 599 F.3d 1018 (9th Cir. 2010). In Mattos I, the Ninth Circuit held on January 12, 2010 that tasering an unarmed woman who interfered with the arrest

12 - OPINION & ORDER

of her belligerent husband was not excessive. Mattos I, 590 F.3d at 1089. In Brooks, the Ninth Circuit decided on March 26, 2010 that deploying a Taser in drive-stun mode three times on a pregnant, unarmed woman who refused to sign the Notice of Infraction that accompanied her speeding ticket was also not unconstitutionally excessive. Brooks, 599 F.3d at 1020, 1030. In both cases, the need for force was relatively low, and the actual use of force was the same as or higher than here. See Mattos I, 590 F.3d at 1089; Brooks, 599 F.3d at 1030–31. Although these cases were consolidated and reheard en banc after the tasering at issue here, and the excessive force holdings were ultimately reversed, on August 21–22, 2010, the state of the law indicated that tasering Plaintiff in this situation was reasonable. Mattos II, 661 F.3d at 446, 451. Zundel therefore could not have been on notice that use of his Taser on Plaintiff was excessive; accordingly, Zundel is entitled to qualified immunity on the excessive force claim. Defendants' motion for summary judgment on this claim is granted and Plaintiff's motion is denied.

**II.     Unreasonable Seizure**

Plaintiff also contends that Zundel's Taser deployment constituted an unreasonable seizure. The Fourth Amendment protects people from unreasonable searches and seizures. See U.S. Const. amend. IV; Cameron v. Craig, 713 F.3d 1012, 1021 (9th Cir. 2013). The Fourth Amendment, however, "does not proscribe all state-initiated . . . seizures; it merely proscribes those which are unreasonable." United States v. Willis, 431 F.3d 709, 714 (9th Cir. 2005) (citing Florida v. Jimeno, 500 U.S. 248, 250 (1991)). Under the Fourth Amendment, a police officer may arrest a person without a warrant if the officer has probable cause to believe the person has committed a crime in the officer's presence. Blankenhorn v. City of Orange, 485 F.3d 463, 470–71 (9th Cir. 2007). "Probable cause" exists if the available facts suggest a "fair probability" that the suspect has committed a crime. Tatum v. City & Cnty. of S.F., 441 F.3d 1090, 1094 (9th Cir.

2006). To determine whether an officer had probable cause at the time of a plaintiff's arrest, the court must determine "whether at that moment the facts and circumstances within [his] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964) (citations omitted).

Although the officers did not arrest Plaintiff on August 21–22, 2010, I assume for the purpose of analysis that tasering Plaintiff constituted a seizure requiring probable cause that Plaintiff had committed a crime. See Blankenhorn, 485 F.3d at 470–71. Probable cause to believe a crime was committed does not necessarily preclude a finding of excessive force, and both must be analyzed separately. See Brooks, 599 F.3d at 1022. As noted above, when Zundel returned inside Pudgy's, he believed Plaintiff and Lucia were engaged in the crime of disorderly conduct in the second degree under O.R.S. 166.025(1). Section 166.025(1) provides, in pertinent part, "A person commits the crime of disorderly conduct in the second degree if, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, the person . . . [e]ngages in fighting or in violent, tumultuous or threatening behavior[.]"

Plaintiff essentially argues that because he was an employee escorting a patron out of the bar, Plaintiff lacked the requisite intent under O.R.S. 166.025(1). Plaintiff further argues that Zundel should have recognized him as an employee, and had Zundel recognized Plaintiff, Zundel would not have had probable cause to believe Plaintiff was engaged in a crime. However even if Zundel had recognized Plaintiff and knew him to be the Pudgy's bouncer, once he announced "Police" and ordered the men to separate, the fact that the men failed to comply gave Zundel the facts and circumstances sufficient to warrant his reasonable belief that Plaintiff was engaged in disorderly conduct in the second degree, regardless of whether Plaintiff was a Pudgy's employee.

Therefore, Zundel had probable cause to seize Plaintiff. Drawing all inferences in the light most favorable to Plaintiff, the undisputed facts establish that the seizure was reasonable. Defendants' motion for summary judgment on Plaintiff's unreasonable seizure claim is granted and Plaintiff's motion on this claim is denied.[2]

**III.    Battery**

Plaintiff contends that Zundel's use of his Taser on Plaintiff constituted a battery under Oregon law. Zundel argues that, because his use of force was reasonable, it was justified,[3] and therefore not battery. Police officers using reasonable force to legitimately fulfill their duty as police officers are not liable for battery. E.g., Gigler v. City of Klamath Falls, 537 P.2d 121, 126 (Or. Ct. App. 1975). However, as explained above, there are genuine issues of material fact as to whether the force Zundel used on Plaintiff was reasonable or excessive. Because the battery claim depends on whether the use of force was reasonable, and the question of whether the force was reasonable remains, the parties' motions for summary judgment on Plaintiff's battery claim are denied.

**IV.    Negligence**

Plaintiff's final claims assert the City of Seaside negligently hired, trained, and supervised Officer Zundel, which directly led to Plaintiff's injuries. In his motion for partial summary judgment, Plaintiff concedes the negligent hiring claim. Negligent supervision

---

[2] Given my conclusion that there was no constitutional violation, it is unnecessary to discuss Defendants' alternative qualified immunity argument.

[3] In the Memorandum of Law in Support of Defendants' Motion for Summary Judgment, Defendants describe this justification as both a "privilege" and "good-faith immunity." Defs.' Mem. Supp. Mot. Summ. J. 15–16. I understand Defendant to be using the three phrases interchangeably, however I note that "the doctrine of qualified immunity does not shield defendants from state law claims." Johnson v. Bay Area Rapid Transit Dist., 724 F.3d 1159, 1171 (9th Cir. 2013). The appropriate defense is justification as outlined in O.R.S. 161.235.

requires that the employer knew or should have known that the employee had dangerous propensities, and nonetheless placed the employee "in a position where it is foreseeable that he could injure the plaintiff in the course of the work." Chesterman v. Barmon, 727 P.2d 130, 132 (Or. Ct. App. 1986). There is no evidence in the record that Officer Zundel had dangerous propensities, or that the City of Seaside knew or should have known that Officer Zundel had dangerous propensities. Moreover, the thorough background check that the Seaside Police Department conducted on Officer Zundel before employing him did not reveal any dangerous propensities. Robert Gross Decl. ¶¶ 2–3. As to the training claim, the Department of Public Safety Standards and Training certified Zundel as a police officer pursuant to state requirements. Id.

Plaintiff brings forth no evidence on the supervision or training claims to create a disputed issue of fact. Plaintiff's only argument is that because Zundel's single use of a Taser—on Plaintiff—was constitutionally unreasonable, he must have been negligently trained and supervised in the use of his Taser. Even assuming the force was excessive does not, without more, expose any negligence in training or supervision. There are no material facts presenting a genuine issue for trial. The undisputed facts establish that the City of Seaside was not negligent in training or supervising Zundel; accordingly Defendants' motion for summary judgment on the negligent training and supervision is granted. Plaintiff's motion on these claims is denied.

///
///
///
///
///

16 - OPINION & ORDER

## CONCLUSION

Based on the reasons above, Plaintiff's motion for summary judgment [#27] is denied and Defendants' motion for summary judgment [#16] is granted as to all claims except the battery claim.

IT IS SO ORDERED.

Dated this \_\_\_3\_\_\_ day of \_\_\_NN_____, 2013.

_____
MARCO A. HERNANDEZ
United States District Judge